IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFREY A. SONCZALLA,

    Plaintiff,

v.                                     CIVIL ACTION NO. 1:16CV11
                                            (Judge Keeley)

UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS;
DUTY OFFICER; UNKNOWN STAFF;
DEREK MCINTYRE; JOHN GILLEY;
and MATTHEW DOYLE,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES

    The plaintiff, Jeffrey A. Sonczalla ("Sonczalla"), has pursued two lawsuits in this Court, one pursuant to the Federal Tort Claims Act ("FTCA"), and another pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Both arise out of the same facts and circumstances. Now pending is the motion of the United States to limit the scope of damages available to Sonczalla (Dkt. No. 84). Because this motion raised questions about Sonczalla's mental capacity, the Court appointed Tobi N. Gilbert, Psy.D., to conduct a neuropsychological evaluation (Dkt. Nos. 89, 92). Following receipt of Dr. Gilbert's expert report, the parties supplemented their arguments on the pending motion to limit damages (Dkt. No. 126). Briefing is now complete and the motion is ripe for decision. After careful consideration of the parties' arguments, for the reasons that follow, the Court

**SONCZALLA V. UNITED STATES, ET AL.**                                   1:16CV11

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

**GRANTS** the United States' motion (Dkt. No. 84) and **LIMITS** the scope of Sonczalla's FTCA damages to $10,000.00.

### I. BACKGROUND

**A.     Factual Background**

On June 13, 2013, an inmate assaulted Sonczalla in his cell at the United States Penitentiary ("USP") Hazelton, located in Bruceton Mills, West Virginia (Dkt. No. 5-1 at 2). When found nine hours later, Sonczalla was unconscious and covered in blood. Id. He was then transported to West Virginia University Hospitals ("WVUH"), where he was "diagnosed with a subdural hematoma, subarachnoid hemorrhage, intraparenchymal hemorrhage, as well as 6th and 7th rib fractures" (Dkt. No. 85 at 1-2). After remaining at WVUH for one month, Sonczalla was transferred to Monongalia General Hospital where he stayed for another month.

In August 2013, the Federal Bureau of Prisons ("BOP") transferred Sonczalla to its Federal Medical Center ("FMC") in Springfield, Missouri. Id. There he participated in a number of neurological and psychological consultations, which detailed the effects of his injuries. Id. at 2-3. Based on this information, Sonczalla filed an administrative tort claim with the BOP, requesting $10,000.00 in damages (Dkt. No. 84-1 at 31).

**SONCZALLA V. UNITED STATES, ET AL.                                1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

**B.   Procedural Background**

After the BOP denied his administrative claim, Sonczalla filed a complaint in this Court on January 26, 2016, alleging causes of action pursuant to the FTCA and <u>Bivens</u>. On May 12, 2017, following nine extensions of time, the defendants, Tonya Brown-Stobbe, Captain, Duty Officer, BOP, D. McIntyre, Operation Lieutenant, United States, and Unknown Staff (collectively, "the Defendants"),[1] finally answered the complaint and moved to dismiss Sonczalla's <u>Bivens</u> claims or, alternatively, to bifurcate the case and temporarily stay his <u>Bivens</u> claims pending resolution of his FTCA claims (Dkt. Nos. 47, 48). After Magistrate Judge Aloi bifurcated the case and temporarily stayed Sonczalla's <u>Bivens</u> claims as requested (Dkt. No. 53), the parties proceeded through discovery in the FTCA case (Dkt. Nos. 58, 65).

Pursuant to 28 U.S.C. § 2675(b), on February 2, 2018, the United States moved to limit Sonczalla's FTCA damages to $10,000.00, the amount requested in his administrative tort claim,

---

[1] On November 20, 2018, the Court granted the United States' motion to substitute parties (Dkt. No. 103), and on February 15, 2019, granted Brown-Stobbe's motion to dismiss (Dkt. No. 121). Accordingly, the remaining defendants are the United States, the BOP, Duty Officer, Unknown Staff, Derek McIntyre, John Gilley, and Matthew Doyle.

3

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

(Dkt. No. 84). Because this motion raised questions about Sonczalla's mental capacity, the Court stayed the case and appointed Dr. Gilbert to conduct a neuropsychological evaluation (Dkt. Nos. 89, 92).

At a status conference on December 19, 2018, Sonczalla's court-appointed counsel reported that Dr. Gilbert would soon complete and submit her expert report (Dkt. No. 113). Accordingly, the Court lifted the stay of Sonczalla's FTCA claims (Dkt. No. 115).[2] After finally receiving Dr. Gilbert's report on March 22, 2019, the Court held a further status conference on April 10, 2019, when it directed the parties to submit supplemental briefs on the pending motion to limits damages (Dkt. Nos. 125, 126).

## II. APPLICABLE LAW

"The FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, governs tort claims for injuries arising from the negligent conduct of federal employees acting within the scope of their employment." Lopatina v. United States, 528 F. App'x 352, 356 (4th Cir. 2013). "A plaintiff proceeding against the United States under the FTCA must first file an administrative claim with the relevant federal agency within two

---

[2] This case was also temporarily stayed during the Government shutdown (Dkt. Nos. 117, 118).

**SONCZALLA V. UNITED STATES, ET AL.**                               **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

years after the injury." Id. (citing 28 U.S.C. §§ 2401(b), 2675(a)).

"The administrative claim must contain, among other things, a 'sum certain' for damages." Id. (citing 28 U.S.C. § 2675(b); 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a)). "The presentation of an administrative claim containing a sum-certain demand is a jurisdictional prerequisite to suit." Id. (citing Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278-79 (4th Cir. 2000)). "While a claim remains pending with the agency, a claimant may file an amended claim at any time to increase the amount of her sum-certain demand." Id. (citing 28 C.F.R. § 14.2(c); 39 C.F.R. § 912.5(b)-(c)). "If the administrative claim is denied, or if six months elapse without agency action on the claim, a claimant may bring suit in federal court." Id. (citing 28 U.S.C. § 2675(a)).

"The amount of damages that may be recovered is presumptively limited to the 'amount of the claim presented to the federal agency.'" Id. (quoting 28 U.S.C. § 2675(b)). "A plaintiff may, however, recover a 'sum in excess' of that claim 'where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts,

5

**SONCZALLA V. UNITED STATES, ET AL.**                              **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

relating to the amount of the claim.'" Id. (quoting same). "Post-filing information that is merely 'cumulative and confirmatory' of earlier evidence does not satisfy this exception." Adkins v. United States, 990 F. Supp. 2d 621, 623 (S.D. W. Va. 2014) (citing Kielwien v. United States, 540 F.2d 676, 680 (4th Cir. 1976)). A plaintiff "bear[s] the burden of proving that they are entitled to damages in excess of their administrative claim." Spivey v. United States, 912 F.2d 80, 85 (4th Cir. 1990) (citations omitted).

### III. DISCUSSION

Based on the fact that Sonczalla first presented his claim to the BOP as required by § 2675(a) (Dkt. No. 84-1 at 31-34), the United States argues that, pursuant to § 2675(b), his FTCA damages are limited to the $10,000.00 requested in his claim (Dkt. Nos. 84, 86, 128). Sonczalla, however, contends that his damages should not be so limited because Dr. Gilbert's report confirms that "he lacked the ability to appreciate the nature of his injury and adequately evaluate or understand the value of his claim" (Dkt. No. 127 at 3).

This argument, however, is not based "upon newly discovered evidence not reasonably discoverable at the time," or "upon allegation and proof of intervening facts, relating to the amount

6

**SONCZALLA V. UNITED STATES, ET AL.**                                  **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

of the claim." 28 U.S.C. § 2675(b). Although the Fourth Circuit's approach to § 2675(b) "is 'more favorable to the injured party' than the test used in other circuits," Adkins, 990 F. Supp. 2d at 624 (citation omitted), it nevertheless requires "newly discovered evidence" or "intervening facts." Unfortunately for Sonczalla, his attempt to exceed his administrative request for $10,000.00 in damages is not based on new symptoms or a new diagnosis. Indeed, his injuries——and their extent and impact——were fully diagnosed and documented well before he filed his administrative claim with the BOP (Dkt. No. 85 at 1-2 (citing Dkt. No. 85-1)).

To avoid this conclusion, Sonczalla relies on three cases that, he contends, advance his theory of the case. These include Spivey, 912 F.2d 80, Adkins, 990 F. Supp. 2d 621, and Murphy v. United States, 833 F. Supp. 1199, 1204 (E.D. Va. 1993) (Dkt. No. 127). Each, however, is readily distinguishable.

In Spivey, the Fourth Circuit applied its favorable approach and affirmed the district court's conclusion that the plaintiff's development of tardive dyskinesia after filing her administrative claim "was 'newly discovered' evidence within the meaning of 2675(b)." 912 F.2d at 86. The Fourth Circuit explained that, although "[t]ardive dyskinesia was a known possible side effect of

**SONCZALLA V. UNITED STATES, ET AL.**                             **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

the medications" the plaintiff was taking, she had "exhibited no symptoms of that side effect" before filing her administrative claim. Id. Therefore, because symptoms of tardive dyskinesia did not appear until after the plaintiff had filed her administrative claim, the Fourth Circuit concluded she could not have discovered it beforehand. Id. at 85-86.

In Adkins, a district court in the Southern District of West Virginia applied the Fourth Circuit's favorable approach and concluded that the plaintiff was not bound by the amount of his requested damages because he had not received a conclusive diagnosis about his permanent injuries until after he had filed his administrative claim. 990 F. Supp. 2d at 627-28. The court compared the timeline in Adkins to that in Spivey and Murphy. Id. at 628.

In Murphy, a district court in the Eastern District of Virginia, again applying the Fourth Circuit's favorable approach, concluded that, although the plaintiff was experiencing seizures before filing her administrative claim, her damages should nevertheless not be limited because she "and her health care providers were unaware of the true nature and extent of her cognitive deficits, seizure-like disorder, and functional disabilities at the time the administrative claim was filed." 833

**SONCZALLA V. UNITED STATES, ET AL.**                                        **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

F. Supp. at 1204. To be sure, the court explained that the plaintiff was not diagnosed with a permanent seizure disorder until after filing her administrative claim, which constitutes "'newly discovered evidence' within the meaning of . . . § 2675(b)." Id. at 1204-05.

Unlike the plaintiffs in Spivey, Adkins, and Murphy, Sonczalla's contention here is that his damages should not be capped because he did not have the ability to appreciate, evaluate, and understand the value of his administrative tort claim when he filed it with the BOP (Dkt. No. 127 at 3). But failing to appreciate or evaluate the value of an administrative tort claim is not a means of circumventing the requirements of § 2675(b). Cf. Strait v. United States, No. C 98-0090 MJM, 2000 WL 34031494, at *4 (N.D. Iowa Mar. 27, 2000) (concluding plaintiff's failure to appreciate the ramifications of completing and signing the administrative tort claim form did not permit him to make a claim in excess of his requested claim for $1,900.00 in damages under § 2675(b)).

Moreover, Sonczalla's failure-to-understand argument is belied by the record and the objective findings in Dr. Gilbert's report. Significantly, on August 22, 2013, only two months after being

9

**SONCZALLA V. UNITED STATES, ET AL.**                           **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

assaulted at USP Hazelton, Sonczalla participated in a psychological consultation to evaluate his current level of functioning, and "demonstrated an understanding of what happened to him" and "said his memory is his biggest current problem" (Dkt. No. 128-1 at 3). "He reported some leg weakness" but otherwise "said he feels 'good' . . . ." Id. An examination of his mental status indicated Sonczalla "was alert and fully oriented." Id. His "[s]peech was logical, coherent and goal-directed." Id. There was "[n]o overt evidence of thought disorder." Id. He had "[n]o difficulty tracking conversation." Id. His "[a]ttention and concentration appeared relatively intact." Id. And he demonstrated "[g]ood insight into current memory impairment." Id. Based on these observations, the provider noted that, "[g]iven his current level of cognitive functioning only 2 months post [assault], [Sonczalla's] prognosis is good. No other mental health concerns at this time." Id.

Later, after being transferred to FMC Springfield, Sonczalla participated in another psychological consultation on November 25, 2013 (Dkt. No. 85-6). Although this consultation concluded that he "present[ed] with significant cognitive impairment secondary to a severe traumatic brain injury," the psychologist noted that

**SONCZALLA V. UNITED STATES, ET AL.**                                        **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

Sonczalla was "still in the recovery/rehabilitation phase of his injury . . . [and] has shown substantial improvements in his functioning." Id. at 4, 5. "He does not require assistance with his activities of daily living. He has good insight into his injury and subsequent impairments. He has no current impairments that prevent him from functioning in open population." Id. at 5. And although it was "unclear just how much he will recover from his impairments," the psychologist explained, "it is likely that he will continue to improve some, if not all of the domains currently showing levels of impairment." Id. Indeed, the psychologist professed that Sonczalla's "functioning . . . only 6 months removed from the injury is promising . . . ." Id.

Several months later, on February 21, 2014, Sonczalla participated in a neurological consultation (Dkt. No. 85-7), during which the neurologist noted that Sonczalla was "[a]lert and oriented times three." Id. at 3. His language was slow, and his attention and concentration were "diminished." Id. His judgment and insight and recent and immediate recall were limited, but his "remote history [was] intact except for the time around the incident in July 2013." Id. In her impression, the neurologist concluded that Sonczalla had a "[t]raumatic brain injury with

11

**SONCZALLA V. UNITED STATES, ET AL.** 1:16CV11

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

residual memory problems, language, attention span, personality disorder, vertigo, headache, some insomnia, depression, and anxiety." Id. at 4.

Tellingly, over a year later, and approximately two months before he filed his administrative claim with the BOP, Sonczalla requested a further consultation "to receive some information on his brain injury and prognosis as part of his administrative remedy process." (Dkt. No. 128-1 at 4). During this consultation, Sonczalla reported "doing well" despite "increased vertigo." Id. He was "oriented to his circumstances and surroundings. His speech was logical, coherent, and of a normal rate. . . . His observed affect was calm and stable." Id. And his "concentration, attention, and memory appeared impaired but stable." Id. In sum, he was "[s]table and functioning relatively well." Id. After being informed that information about his brain injury and prognosis "is best obtained through a request from medical records," Sonczalla "displayed a good understanding of this information" and "[n]o barriers to education were noted." Id.

Approximately one month later, Sonczalla participated in another psychological evaluation "for interdisciplinary team preparation." Id. at 5. He again reported "doing well" and "was

12

**SONCZALLA V. UNITED STATES, ET AL.**　　　　　　　　　　　　　　**1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

oriented to his circumstances and surroundings." Id. "His speech was logical, coherent, and of a normal rate." Id. "His observed affect was calm and stable." Id. Although his "concentration, attention, and memory appeared impaired," the provider noted that "[h]e is currently functioning well on a daily basis." Id. He "appears to have no difficulties following unit rules and procedures." Id. And, although he "displayed a good understanding of this information," his unspecified cognitive disorder was "noted as a barrier to education." Id.

Taken together, these records reflect that, at the time he filed his administrative claim with the BOP, Sonczalla, although suffering some impairments, understood what had happened to him and comprehended the extent of his injuries. Other than the unspecified cognitive disorder noted on April 8, 2015, id., no cognitive impairments had been documented since Sonczalla's November 25, 2013 psychological consultation, when he was "still in the recovery/rehabilitation phase of his injury" and would "continue to improve some, if not all of the domains . . . showing levels of impairment" (Dkt. No. 85-6 at 5). Indeed, his only documented impairments at the time he filed his administrative claim were his concentration, attention, and memory, the latter being his chief

**SONCZALLA V. UNITED STATES, ET AL.**                                    **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

complaint. Id. at 3-5. But some impairment of his concentration, attention, and memory fail to establish that Sonczalla lacked the ability to appreciate, evaluate, and understand the value of his administrative tort claim. Therefore, even when viewed in the light most favorable to him as the non-moving party, the Court concludes that he has failed to meet his burden of proving that he is "entitled to damages in excess of [his] administrative claim." Spivey, 912 F.2d at 85 (citations omitted).

This conclusion is further reinforced by Dr. Gilbert's neuropsychological report, which confirms Sonczalla's ability to understand information despite his impairments. Her behavioral observations note that, after discussing confidentiality limits with Sonczalla, "he verbalized understanding and expressed the desire to proceed with testing." Exp. Rep. at 7. Further, throughout testing, Sonczalla had a "5-7 second response time to each question and did not require the questions to be repeated often." Id. Although he often skipped words while reading the sentence comprehension task, "if he was not sure of the answer, he would re-read the sentence until it made sense." Id.

During the mental state examination, Sonczalla "was oriented to his name, age, and date of birth. He named the state, county,

**SONCZALLA V. UNITED STATES, ET AL.**                               **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

and town where he previously resided, as well as the facility, city [sic] and state where the evaluation was completed." Id. at 8. "He accurately stated the year, date, day of the week, and month. He was able to name the current US President and estimate the correct time of the day within 21 minutes." Id. He also "accurately identified and recall [sic] 4 of 4 items after a brief delay," among other things. Id. Together, Sonczalla's score "placed him within the expected range . . . ." Id.

In intellectual functioning, Sonczalla's IQ score was "average" in verbal comprehension, perceptual reasoning, and general ability. Id. at 9. His only "low average" IQ score was in working memory. Id. Based on these scores, Dr. Gilbert concluded that Sonczalla "was currently functioning within the average range in area of general thinking and reasoning skills compared to his age-related peers." Id.

In attention and concentration, Dr. Gilbert noted that Sonczalla "followed conversation and related details of his life and everyday living; however, he was distracted at times, yet was able to self-redirect." Id. at 10. He obtained a "low average" score in auditory attention and concentration. Id. And, based on his speed processing scores, Dr. Gilbert hypothesized that

**SONCZALLA V. UNITED STATES, ET AL.**                                    **1:16CV11**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

Sonczalla may be "sacrific[ing] speed for accuracy" when processing information. Id.

In language skills, Dr. Gilbert noted that Sonczalla "appeared to understand [her] questions and instructions," but he spoke "slowly" and had difficulty finding words "much of the time." Id. at 11. That said, his verbal comprehension score was "within the average range," and his "abstract reasoning and associative and categorical thinking" was "average." Id. at 11, 12. Based in part on these scores, Dr. Gilbert concluded that Sonczalla's "word reading and sentence comprehension skills [were] within expected limits." Id. at 12.

All of this information confirms that, despite his injuries and difficulties with memory, Sonczalla nevertheless retains the ability to read, process, and understand information. Specifically, his scores in intellectual functioning confirm his average abilities in verbal comprehension, preceptual reasoning, and general ability. Id. at 9. Although he may, at times, have to reread sentences or sacrifice speed for accuracy, he does not altogether lack the ability to read and understand information.

While in her diagnostic impression, Dr. Gilbert concluded that Sonczalla's "ability to appreciate information . . . [is]

**SONCZALLA V. UNITED STATES, ET AL.** 1:16CV11

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

compromised secondary to faulty attention and encoding processes, and impaired abilities to accurately interpret the information received," id. at 15, this conclusion is not supported by the objective evidence detailed in her report. For example, Dr. Gilbert's diagnostic impression does not discuss Sonczalla's "average" IQ scores in verbal comprehension, perceptual reasoning, and general ability, or her conclusion that Sonczalla "was currently functioning within the average range in area of general thinking and reasoning skills compared to his age-related peers." Id. at 9. Nor does it discuss Sonczalla's average scores in verbal comprehension, abstract reasoning, and associative and categorical thinking or Dr. Gilbert's conclusion—based on these scores—that Sonczalla's "word reading and sentence comprehension skills [were] within expected limits." Id. at 11, 12.

Even taking into account Dr. Gilbert's impression that Sonczalla's ability to appreciate information is compromised, the evidence preponderates that Sonczalla understood what he was doing when he completed and filed his administrative claim requesting $10,000.00 in damages with the BOP. Although he and his attorney now believe that his claim is worth far more, this knowledge is not based on "newly discovered evidence" or the "allegation and proof

**SONCZALLA V. UNITED STATES, ET AL.** 1:16CV11

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION OF THE UNITED STATES TO LIMIT THE SCOPE OF
DAMAGES [DKT. NO. 84], AND LIMITING THE SCOPE OF DAMAGES**

of intervening facts." Thus, even when viewed in his favor, Sonczalla's evidence fails to meet his burden of proving that he is "entitled to damages in excess of [his] administrative claim." Spivey, 912 F.2d at 85 (citations omitted).

## IV. CONCLUSION

The Court **GRANTS** the United States' motion (Dkt. No. 84), and **LIMITS** the scope of Sonczalla's FTCA claim for damages to $10,000.00.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: July 23, 2019

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE